UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**DYLAN T. HAYES,**

        **Petitioner,**

        **v.**                           **Case No. 24-CV-772**

**BRIAN CAHAK,**[1]

        **Respondent.**

---

## DECISION AND ORDER

---

Dylan T. Hayes is incarcerated at Oshkosh Correctional Institution pursuant to a Sauk County Circuit Court judgment entered on June 9, 2016. (ECF Nos. 1 at 2; 7-1 at 34.) On June 20, 2024, he filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1.) The court screened the petition in accordance with Rule 4 of the Rules Governing Section 2254 Cases and ordered Hayes to show cause why his petition should not be dismissed both as untimely and because he failed to exhaust his remedies in state court. (ECF No. 4.)

---

[1] The caption is updated to the reflect the current warden of the institution where the petitioner is incarcerated. *See* Fed. R. Civ. P. 25(d).

On August 21, 2024, the court received from Hayes a document captioned, "Rebuttal on the Petition for a Writ of Habeas Corpus for Petitioner." (ECF No. 7.) The respondent responded on September 24, 2024. (ECF No. 8.)

As the court recounted in its Rule 4 order, the Wisconsin Court of Appeals affirmed Hayes's conviction on direct appeal on October 18, 2018. (ECF No. 1-1 at 106-14); *State v. Hayes*, 2018 WI App 71, 384 Wis. 2d 632, 922 N.W.2d 315, 2018 Wisc. App. LEXIS 819. His conviction became final for purposes of 28 U.S.C. § 2244(d)(1)(A) on November 20, 2018, when the 30-day deadline for seeking review by the Wisconsin Supreme Court passed. He then had one year, *i.e.*, until November 20, 2019, in which to file a petition for a writ of habeas corpus. 28 U.S.C. § 2244(d)(1).

It was not until February 4, 2021, that Hayes took any further action in his case by filing a petition for a writ of habeas corpus in the Wisconsin Supreme Court. (ECF No. 1-1 at 101); *Hayes v. Cromwell*, 405 Wis. 2d 99, 989 N.W.2d 119 (2021). The court denied the petition on May 19, 2021. (ECF No. 1-1 at 101); *Hayes*, 405 Wis. 2d 99, 989 N.W.2d 119. Although "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the one-year deadline for filing a federal petition for a writ of habeas corpus, 28 U.S.C. § 2244(d)(2), the statute of limitations had already fully run before Hayes took any action after his conviction became final.

After the denial of his petition in the Wisconsin Supreme Court, Hayes's case was idle again for roughly another 18 months until November 1, 2022, when Hayes filed a motion for post-conviction relief in the circuit court. *See State v. Hayes*, Case No. 2013CF255 (Sauk Cnty. Cir. Ct.). The proceedings on that motion ended about a year later on November 30, 2023, when the court of appeals affirmed the circuit court's denial of the motion. (ECF No. 1-1 at 81); *see State v. Hayes*, App. No. 2023AP251 (Wis. Ct. App.). Again, Hayes did not seek review by the Wisconsin Supreme Court. *Id.*

In response to the court's order to show cause, Hayes does not dispute that his petition is untimely. He argues, essentially, that he was doing the best he could as a pro se litigant who was abandoned by his attorneys and forced to rely on other inmates for help. He argues that the court must be lenient because he is not represented by an attorney. Various institutional transfers made litigation difficult because they induced anxiety. And he cannot present his claims to any state court because there is no longer any relief available for him.

"An untimely petition may be salvaged if grounds exist to equitably toll, or pause, the running of the limitations period. But equitable tolling is an extraordinary remedy that is rarely granted." *Ramirez v. Meisner*, No. 23-cv-527-wmc, 2024 U.S. Dist. LEXIS 167505, at *5-6 (W.D. Wis. Sep. 16, 2024) (citing *Tucker v. Kingston*, 538 F.3d 732, 734 (7th Cir. 2008)); *see also Weddington v. Zatecky*, 721 F.3d 456, 464 (7th Cir. 2013). A petitioner must show both that he has been diligently pursuing his rights and "some

extraordinary circumstance stood in his way" of timely filing his petition. *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

Two periods of delay are most relevant here. The first is the more than 800 days that passed between Hayes's conviction becoming final on November 20, 2018, and Hayes's February 4, 2021, petition to the Wisconsin Supreme Court. The second is the more than 530 days between the Wisconsin Supreme Court's denial of his petition on May 19, 2021, and when Harris sought post-conviction relief in the circuit court on November 1, 2022. Hayes must be able to show that he was diligently pursuing his rights during both of these periods, and that some extraordinary circumstance stood in his way such that no more than one-year in total passed since his conviction became final.

Although Hayes offers a general discussion of the difficulties he faced, he does not state what specifically prevented him from pursuing post-conviction relief during these periods. Hayes's pro se status and reliance on other inmates for help do not excuse his untimeliness. Nearly all habeas petitioners are pro se and without legal training. This is far from an extraordinary circumstance. *See, e.g.*, *Reed v. Buesgen*, No. 23-cv-0965-bhl, 2024 U.S. Dist. LEXIS 67873, at *7-8 (E.D. Wis. Apr. 15, 2024) (citing *Socha v Boughton*, 763 F.3d 674, 685 (7th Cir. 2014)).

The court's obligation to liberally construe a pro se litigant's filings means that there is some flexibility around the edges when it comes to the scope of a claim or

compliance with procedural formalities. *See, e.g.*, *Otis v. Demarasse*, 886 F.3d 639, 644 (7th Cir. 2018). It is, for example, the reason why this court (as it does in the analysis that follows) carefully reviews pro se filings in an attempt to look for facts and arguments that do not jump out initially. It does not mean that pro se litigants are excused from rules or deadlines. *See, e.g.*, *McNeil v. United States*, 508 U.S. 106, 113 (1993); *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008).

There are hints that Hayes may be alleging that he was abandoned by his appellate counsel. This is supported by the fact that, although filing a petition is generally within the scope of appointed counsel's responsibilities, counsel did not seek review by the Wisconsin Supreme Court. Hayes also refers to another case where his appellate counsel was disciplined for failing to diligently represent a client. (ECF No. 7 at 5); *Office of Lawyer Regulation v. Gonzalez (In re Gonzalez)*, 2018 WI 104, 384 Wis. 2d 300, 919 N.W.2d 559.

Abandonment by appellate counsel may support equitable tolling. *See Schmid v. McCauley*, 825 F.3d 348, 350 (citing *Maples v. Thomas*, 565 U.S. 266 (2012); *Christeson v. Roper*, 135 S. Ct. 891 (2015)). But Hayes does not offer any supporting details, such as when he learned that his attorney was not taking any further action in his case. Once Hayes learned that counsel was not taking any further action, it was incumbent on him to then proceed diligently. *See Maples*, 565 U.S. at 283. Hayes has failed to show that any portion of this period is subject to equitable tolling.

But even if the whole period from November 20, 2018, when his conviction became final, to February 4, 2021, when Hayes filed a habeas petition in the Wisconsin Supreme Court, could be equitably tolled, that would still leave the more than 530 days between the Wisconsin Supreme Court's denial of his petition on May 19, 2021, and when Harris sought post-conviction relief in the circuit court on November 1, 2022. And then there would also be the period from late-December 2023, when the deadline passed for Hayes to seek review in the Wisconsin Supreme Court, and late-June 2024 when he filed the present petition. Even if Hayes could show that some of this time should be equitably tolled, if more than a year was not excluded, his petition would be untimely. As it stands, Hayes has failed to show that *any* time should be equitably tolled.

In the absence of a basis to equitably toll the statute of limitations, a petitioner may avoid dismissal of an untimely petition if he can show that he is actually innocent. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013); *see also Dixon v. Williams*, 93 F.4th 394, 403 (7th Cir. 2024) ("A habeas petitioner may use a claim of actual innocence to overcome a procedurally defaulted and time-barred habeas claim, as a way to prevent a miscarriage of justice."). It is rare for a petitioner to satisfy this standard. *McQuiggin*, 569 U.S. at 386.

The petitioner must show that, "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin*, 569 U.S. at 386 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). This

requires not merely the demonstration of reasonable doubt, but doubt so great that no reasonable juror could convict him. *Wilson v. Cromwell*, 69 F.4th 410, 422 (7th Cir. 2023) (quoting *Schlup*, 569 U.S. at 329). "It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do." *Schlup*, 513 U.S. at 329.

"To pass through the gateway, the petitioner must support the claim of actual innocence with 'reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Dixon v. Williams*, 93 F.4th 394, 403 (7th Cir. 2024) (quoting *Schlup*, 513 U.S. at 324); *see also Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) ("To demonstrate innocence so convincingly that no reasonable jury could convict, a prisoner must have documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim.").

Hayes appears to argue that he is actually innocent of the crimes based on newly discovered evidence, although his argument is generally undeveloped. He closes his response with, "If he is given an evidentiary hearing, he can explain MORE" (ECF No. 7 at 7), but this sort of bald request is insufficient to merit a hearing. *See* 28 U.S.C. § 2254(e)(2). Beyond the elements of 28 U.S.C. § 2254(e)(2), a movant must proffer what

specifically he believes he will prove at an evidentiary hearing and do so in a manner that demonstrates that an evidentiary hearing would not be merely a proverbial fishing expedition. *Jackson v. Richardson*, No. 20-cv-0665-bhl, 2024 U.S. Dist. LEXIS 29267, at *15 (E.D. Wis. Feb. 21, 2024); *see also Sibley v. Culliver*, 377 F.3d 1196, 1206-07 (11th Cir. 2004) (noting that the court's confidence in the outcome of the state trial must be undermined before granting an evidentiary hearing regarding actual innocence) (citing *Davis v. Gammon*, 27 Fed. Appx. 715, 717 (8th Cir. 2001); *Patterson v. Bartlett*, 56 Fed. Appx. 762, 764 (9th Cir. 2002)).

The court has carefully reviewed the 34 pages of documents Hayes submitted along with his response (ECF No. 7-1) as well as the 45 pages of his petition (ECF No. 1) and the 114 pages appended to his petition (ECF No. 1-1) in an attempt to understand the full nature and substance of his actual innocence claim.

It appears that Hayes's argument is that the victim, A.B., lied about all the offenses. (*See, e.g.*, ECF Nos. 1-1 at 46, 47; 7 at 2.) He attached 34 pages of documents that appear to be largely records of other contacts A.B. had with law enforcement. (ECF No. 7-1.) The records were submitted out of order and incomplete, such that it was

8

Case 2:24-cv-00772-WED    Filed 12/02/24    Page 8 of 14    Document 9

necessary for the court to invest significant time simply trying to make sense of what the documents purported to be.[2]

Having closely reviewed the documents, they fall far short of establishing that Hayes is actually innocent. In fact, none relate to Hayes's convictions. Rather, they relate to instances where A.B. was involved in domestic disputes with others (ECF No. 7-1 at 9, 3, 7, 8, 4, 1, 2), reported a theft (ECF No. 7-1 at 10), was accused of following a stranger into his home and battering him (ECF No. 7-1 at 14-15), was battered at a party (ECF No. 7-1 at 11), reported a friend's child was showing pornography to other children (ECF No. 7-1 at 29, 13), and picked up property from her mother (ECF No. 7-1 at 17-18).

Only three incidents are even remotely relevant. One page appears to be a record of some sort of police activity on June 18, 2013, where "No Theft – False Complaint" is in the "Comment" field and "arrest made (non traffic)" appears in the "Disposition" field. (ECF No. 7-1 at 16.) But there is no indication that it relates to A.B. The incident number that identifies the report is not referenced anywhere else in the documents submitted.

In another incident, A.B. was arrested for battering her brother's girlfriend after trying to portray the girlfriend as the aggressor in a fight. (ECF No. 7-1 at 27-28.) After

---

[2] Using the ECF pagination, it appears that the order of the documents should be 5, 6, 30, 9 (page 1 of 2; page 2 missing), 3, 7, 8, 4, 10 (page 1 of 3; pages 2 and 3 missing), 1, 2, 16, 14, 15, 11 (page 1 of 13; all other pages except page 5 missing), 12 (page 5 of 13; all other pages except page 1 missing), 29 (page 1 of 3; pages 2 and 3 missing), 13 (page 2 of 9; all other pages missing), 26, 27, 28, 19, 20, 21, 22, 23, 24, 25, 17, 18.

A.B. was released from jail, she returned home and soon thereafter called the police, reporting that her brother had hit her in the face. (ECF No. 7-1 at 19-25.) The police reports for both incidents suggest that, because A.B. was upset that her brother took his girlfriend's side in A.B.'s dispute with his girlfriend, A.B. may have provoked a confrontation with her brother so she could have him arrested. (ECF No. 7-1 at 19-25.) A.B. then battered her mother when she intervened in the confrontation with her brother. (ECF No. 7-1 at 19-25.)

A court ordinarily must consider a claim of actual innocence in light of the overall record. *See Wilson*, 69 F.4th at 422; *see also House v. Bell*, 547 U.S. 518, 538 (2006). The parties have not provided the court the complete trial record. Nonetheless, the nature of Haye's claims makes review of the whole record unnecessary. In addition to his petition, the record provided adequately outlines the nature of the evidence against Hayes and his defense. (*See, e.g.*, ECF No. 1-1 at 15-28; 106-14.) The jury was presented with Hayes's theory of defense—that A.B. was a spurned lover who fabricated the allegations of rape because Hayes refused to have sex with her, and he supported this defense by impeaching A.B. as to certain details. *See Hayes*, 2018 WI App 71, ¶¶ 5-6, 10-11.

Further impeachment of A.B. would not have prevented a reasonable juror from convicting Hayes. Impeachment evidence will rarely satisfy the high threshold of demonstrating actual innocence. *See Sawyer v. Whitley*, 505 U.S. 333, 349 (1992); *see also*

*Calderon v. Thompson*, 523 U.S. 538, 563 (1998) (noting that impeachment "is a step removed from evidence pertaining to the crime itself"); *McDowell v. Lemke*, 737 F.3d 476, 484 (7th Cir. 2013) (finding that evidence of a detective's malfeasance in other cases did not demonstrate petitioner was actually innocent; "latter-day impeachment evidence 'seldom, if ever, make[s] a clear and convincing showing that no reasonable juror would have believed the heart of [the witness's] account ... .'" (quoting *Sawyer*, 505 U.S. at 349)); *Kraybill v. Adkins*, No. 1:23-cv-03314, 2024 U.S. Dist. LEXIS 177204, at *14 (N.D. Ill. Sep. 30, 2024) ("While impeachment evidence is for some purposes equivalent to exculpatory evidence, *see Giglio v. United States*, 405 U.S. 150, 153 (1972), Heggesta's alleged inconsistent statements are hardly the sort of 'documentary, biological (DNA), or other powerful evidence,' *Hayes*, 403 F.3d at 938, that is required to support a plea of actual innocence."); *Austin v. Smith*, No. 15-C-272, 2022 U.S. Dist. LEXIS 77425, at *21-22 (E.D. Wis. Apr. 28, 2022) ("The remaining evidence is not enough to meet the demanding actual innocence standard. At most, the letters, audio recordings, and police report supply impeachment evidence of various witnesses."); *Lenoir v. Williams*, No. 14 C 2376, 2015 U.S. Dist. LEXIS 18483, at *27 (N.D. Ill. Feb. 17, 2015) ("This impeachment evidence does not provide a basis to establish Lenoir's actual innocence because it is 'a step removed from evidence pertaining to the crime itself.'" (quoting *Calderon v. Thompson*, 523 U.S. 538, 563 (1998))); *United States ex rel. Bolton v. Robert*, No. 05 C 801, 2010 U.S. Dist. LEXIS 85824, at *15-16 (N.D. Ill. Aug. 19, 2010) ("An uncorroborated statement that

at best impeaches one brick on a wall of evidence provided by the State does not rise to the level of" demonstrating actual innocence.). In fact, the actual innocence bar is so high that even the victim's recantation of her claims may be insufficient. *See Arnold v. Dittmann*, 901 F.3d 830, 839-40 (7th Cir. 2018).

Of the most-relevant incidents, the latter incidents occurred in 2018--long after Hayes's conviction. As to the June 18, 2013, police report, although nothing in the record says so, the court infers that A.B. was charged with having falsely reported a crime. Taken together, these records may suggest that, both before and after accusing Hayes, A.B. lied to police in other incidents.

But proof that A.B. lied, or even attempted to manipulate persons and employ the criminal justice system as a means of personal revenge in other instances, does not satisfy the exceptionally high bar of actual innocence. Even in a case like this, which Hayes characterized as a "'he said/she said' case where credibility was key" (ECF No. 1-1 at 15), additional evidence impeaching the victim would not preclude a reasonable jury finding Hayes guilty.

It is not uncommon for crime victims to have a history of lying. But liars are not exempt from the protections of the criminal law. Nor is a person somehow exempt from conviction because he committed the crime against a person with a history of lying. It takes far more to pass the high bar to prove actual innocence. It is entirely plausible that A.B. was both a liar and a victim of the crimes of which Hayes was convicted. *See, e.g.*,

*Dixon*, 93 F.4th at 405 ("It can, of course, simultaneously be true that McDermott was abusive and a liar and that Dixon committed the crime.").

Because Hayes has failed to demonstrate his actual innocence, the court cannot excuse his untimeliness. The court must dismiss his petition. *See* 28 U.S.C. § 2244(d)(1).

Because the court finds that it must dismiss his petition, the court must consider whether to grant Hayes a certificate of appealability. *See* Rule 11, Rules Governing Section 2254 Cases.

> [W]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue … if the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 478 (2000); 28 U.S.C. § 2253(c)(2).

The court finds that it is not debatable among jurists of reason that Hayes's petition is both untimely and that he has failed to demonstrate that his untimeliness should be excused, either by way of equitable tolling or because he is actually innocent. Consequently, the court must deny Hayes a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2); Rule 11 of the Rules Governing Section 2254 Cases.

**IT IS THEREFORE ORDERED** that Hayes's petition for a writ of habeas corpus is **dismissed**. The court declines to issues a certificate of appealability. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 2nd day of December, 2024.

WILLIAM E. DUFFIN
U.S. Magistrate Judge